-ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO, OFICINA DE GERENCIA DE PERMISOS<br><br>Recurridos<br><br>v.<br><br>ING. IVÁN PEÑA ALVARADO, JAVIER VÁZQUEZ PEÑA, CLARISSA PEÑA SUÁREZ, ARSENIO PEÑA CAMACHO, ORLANDO B. PEÑA CAMACHO, HÉCTOR PEÑA, MARÍA L. PEÑA ARTEMIO PEÑA<br><br>Recurrentes | KLRA202400504 | *Revisión Administrativa* procedente del Departamento de Desarrollo Económico y Comercio<br><br>Caso Núm. 2021-405502-CUB-004009<br><br>Sobre: Consulta de Ubicación |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de octubre de 2024.

I.

El 16 de noviembre de 2021, QMC Telecom, LLC (QMC) radicó ante la Oficina de Gerencia de Permisos (OGPe) una Solicitud de Consulta de Ubicación, Caso Número 2021-405502-CUB-004009, con la intención de construir ciertas facilidades de telecomunicaciones en dicha propiedad. El 6 de noviembre de 2023 se celebró la Vista Pública correspondiente. El 17 de noviembre de 2023, la parte recurrente presentó *Memorando en Oposición a la Consulta de Ubicación.*[1] Adujo entre otros asuntos, tres puntos principales para la oposición: 1) susceptibilidad a desplazamientos; 2) titularidad del área específica donde se pretende ubicar la torre de telecomunicaciones por QMC no les pertenece completamente a los dueños de la Finca 1,415, sino a la Sucesión Peña Camacho; 3)

---

[1] Apéndice XII del recurso, págs. 93-99.

Número Identificador

SEN2024_____

razones de estética de la zona ecológica sensitiva y daños a la salud de los residentes.[2]

Por otro lado, el 22 de noviembre de 2023, QMC presentó *Respuesta a "Memorando en Oposición a la Consulta de Ubicación"*.[3] Alegó que debe aprobarse la Consulta de Ubicación porque no existen áreas viables de ubicación fuera de "áreas ecológicamente sensitivas". Además, expuso que la ubicación propuesta es apta para la construcción de la torre, y que la facilidad será construida fuera de los predios de los Interventores.[4]

El 10 de julio de 2024, la OGPe notificó *Resolución* dando paso a la Consulta de Ubicación.[5] Oportunamente, el 29 de julio de 2024, los recurrentes presentaron *Recurso de Revisión Administrativa* ante la División de Revisiones Administrativas de la OGPe.[6] Luego, el 15 de agosto de 2024, QMC presentó su Respuesta a *"Recurso de Revisión Administrativa"*.[7]

Transcurrido el término de quince (15) días desde la presentación de dicho Recurso sin que la agencia actuara sobre el mismo, el 12 de septiembre de 2024 los recurrentes acudieron ante nos.[8] Entre los señalamientos de error que elaboran, sostienen que

---

[2] *Íd.*

[3] Apéndice XVI del recurso, págs. 189-203.

[4] *Íd.*

[5] Apéndice XVII y XVIII del recurso, págs. 204-212.

[6] Apéndice XX del recurso, págs. 218-237.

[7] Apéndice XXI Y XXII del recurso, págs. 238-249.

[8] Plantean:

PRIMER ERROR- ERRÓ LA OFICINA DE GERENCIA DE PERMISOS EN LA DETERMINACIÓN DE HECHOS #13 AL ESTABLECER QUE: "LA FACILIDAD PROPONE CONSTRUIRSE COMO UN MONOPOL -EN VEZ DE UNA TORRE TRIPOLAR- PARA REDUCIR AL MÁXIMO EL EFECTO ESTÉTICO ADVERSO QUE PUDIESE TENER. LA UBICACIÓN SELECCIONADA PARA LA FACILIDAD ESTÁ CATALOGADA CON SUSCEPTIBILIDAD MODERADA DE DESLIZAMIENTOS POR RAZÓN DE LLUVIAS INTENSAS CONFORME AL MAPA USGS."

SEGUNDO ERROR- ERRÓ LA OFICINA DE GERENCIA DE PERMISOS EN LA DETERMINACIÓN DE HECHOS #15 AL ESTABLECER QUE: "QMC ARGUMENTÓ QUE OBTUVO UN ESTUDIO GEOTÉCNICO EL 4 DE MAYO DE 2021 DE LA COMPAÑÍA SUPER FOUNDATION SPECIALIST, CORP. A TRAVÉS DEL INGENIERO GEOTÉCNICO, JUAN F. MEJÍAS LÓPEZ, TITULADO, GEOTECHNICAL INVESTIGATION REPORT FOR PROPOSED TELECOMMUNICATIONS TOWER PELLEJAS SITE, OROCOVIS, PUERTO RICO JOBO [SIC] NO. E-483. ESTE RESUMIÓ LA INFORMACIÓN OBTENIDA CON RESPECTO AL ÁREA PROPUESTA Y SUS RECOMENDACIONES PARA LA CONSTRUCCIÓN DE LA FACILIDAD DE TELECOMUNICACIONES. SEGÚN

la Agencia recurrida incurrió en serias violaciones al debido proceso de ley, por no haberles notificado la *Resolución* emitida. Específicamente apuntan a que se violó la Sección 3.14 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto* Rico, Ley Núm. 38-2017,[9] rectora de la forma en que se tienen que notificar los dictámenes administrativos.

En atención a ello, el 1 de octubre de 2024 compareció la OGPe, aceptando su error. Nos indica lo siguiente:

> Considerando el estado de derecho y en virtud del error señalado por la Recurrente relacionado al defecto

---

ALEGA, SURGE DEL ESTUDIO, EL SUELO DONDE QUEDARÍA INSTALADO EL MONOPOL ES ROCA SÓLIDA (CHIEFLY ANDESITE AND BASALT LAVA, GENERALLY PILLOWED, BUT LOCALLY HAVING COLUMNAR JOINTING; SOME VERY THICK BEDDED COARSE BASALT TUFF AND THIN-AND MEDIUM BEDDED TUFFACEOUS SANDSTONE AND SILTSTONE...")."

TERCER ERROR: ERRO LA OFICINA DE GERENCIA DE PERMISOS EN LA DETERMINACIÓN DE HECHOS #16 AL ESTABLECER QUE: "POR SU PARTE, EL MEMORANDO DEL ING. IVÁN PEÑA ALVARADO CONCLUYE QUE EL TERRENO EN CONTROVERSIA ES DE MUY ALTA SUSCEPTIBILIDAD A DESLIZAMIENTOS, SIN EMBARGO, LA CONCLUSIÓN NO ESTUVO APOYADA EN UN ESTUDIO GEOTÉCN 100 DE LOS SUELOS OBJETO DE LA CONSULTA DE UBICACIÓN".

CUARTO ERROR: ERRÓ LA OFICINA DE GERENCIA DE PERMISOS AL APROBAR LA CONSULTA DE UBICACIÓN SI TOMANDO COMO CIERTA LA DETERMINACIÓN DE HECHOS #14: "EL MAPA USGS SE UTILIZA COMO GUÍA PARA LA PLANIFICACIÓN DE DESARROLLO, ESTRATEGIAS DE MITIGACIÓN Y MANEJO DE EMERGENCIAS. EL MAPA NO SUSTITUYE LA NECESIDAD DE REALIZAR UN ESTUDIO DE ESTABILIDAD DE SUELO POR UN GEÓLOGO O INGENIERO AUTORIZADO SOBRE EL TERRENO QUE SEA OBJETO DE DESARROLLO.", LO CIERTO ES QUE LA PARTE PROPONENTE NO SATISFIZO ESTE CRITERIO PUES EL ESTUDIO GEOTÉCN 100 DEL 4 DE MAYO DE 2021 TITULADO GEOTECHNICAL INVESTIGATION REPORT FOR PROPOSED TELECOMMUNICATIONS TOWER PELLEJAS SITE, OR000VIS, PUERTO RICO, REALIZADO POR SUPER FOUNDATION SPECIALIST, CORP. A TRAVÉS DEL INGENIERO GEOTÉCNICO, JUAN F. MEJÍAS LÓPEZ, NO INCLUYO UN ESTUDIO DE ESTABILIDAD DE SUELO.

QUINTO ERROR: ERRÓ LA OFICINA DE GERENCIA DE PERMISOS AL APROBAR LA CONSULTA DE UBICACIÓN A SABIENDAS DE EXISTE UNA CONTROVERSIA DE TITULARIDAD YA QUE EL ÁREA ESPECÍFICA DONDE SE PRETENDE UBICAR LA TORRE DE TELECOMUNICACIONES POR QMC TELECOM NO LES PERTENECE COMPLETAMENTE A LOS DUEÑOS DE LA FINCA 1,415.

SEXTO ERROR: ERRÓ LA OFICINA DE GERENCIA DE PERMISOS EN SUS CONCLUSIONES DE DERECHO CONTENIDAS EN LOS PÁRRAFOS 8 AL 15 Y APROBAR LA CONSULTA DE UBICACIÓN A PESAR DE QUE LA SECCIÓN 9.11.2.3 DEL REGLAMENTO CONJUNTO DEL 16 DE JUNIO DE 2023 VIGENTE, ASÍ COMO DEL REGLAMENTO CONJUNTO 2020 QUE ESTABA EN VIGOR PREVIAMENTE, PROHÍBE EXPRESAMENTE LA UBICACIÓN DE TORRES E INSTALACIONES DE TELECOMUNICACIONES EN TERRENOS CLASIFICADOS COMO SUSCEPTIBLES A DESLIZAMIENTOS POR EL SERVICIO GEOLÓGICO DE ESTADOS UNIDOS (USGS).

SÉPTIMO ERROR: ERRÓ LA OFICINA DE GERENCIA DE PERMISOS AL APROBAR LA CONSULTA DE UBICACIÓN A PESAR DE QUE SE COMETIERON SERIAS VIOLACIONES AL DEBIDO PROCESO DE LEY.

[9] 3 LPRA § 9654.

en la notificación, la Resolución incorrectamente notificada no surtió efecto, los términos no han comenzado a decursar hasta tanto la OGPe notifique adecuadamente, y, por lo tanto, el Recurso presentado bajo este epígrafe es uno prematuro, el cual priva a este Tribunal de considerarlo en los méritos.[10]

Con el beneficio de la comparecencia de las partes, el derecho y jurisprudencia aplicables, resolvemos.

II.

En lo pertinente la Sección 3.14 de la LPAU dispone:

La agencia deberá especificar en la certificación de sus órdenes o resoluciones los nombres y direcciones de las personas naturales o jurídicas a quienes, en calidad de partes, les fue notificado el dictamen, a los fines de que estas puedan ejercer efectivamente el derecho a la revisión judicial conferido por ley.
La agencia deberá notificar con copia simple por correo ordinario o electrónico a las partes, y a sus abogados de tenerlos, la orden o resolución a la brevedad posible, y deberá archivar en autos copia de la orden o resolución final y de la constancia de la notificación.[11]

La ausencia de notificación a las partes es contrario al debido proceso de ley, exigente de que las partes sean notificadas de los escritos que se producen durante el trámite judicial.[12] Ciertamente, la notificación es fundamental en la actuación judicial y "para que una resolución u orden surta efecto, tiene que ser no solamente emitida por un tribunal con jurisdicción, sino también notificada adecuadamente a las partes ya que es a partir de la notificación que comienzan a cursar los términos establecidos".[13] De no notificarse adecuadamente, la resolución, orden o sentencia no surte efecto y los términos no comienzan a decursar. El Tribunal Supremo ha expresado que:

Es claro que la notificación de un dictamen judicial es un requisito con el que se debe cumplir como parte del debido proceso de ley en su vertiente procesal, de manera que el ciudadano afectado pueda enterarse de la decisión que se ha tomado en su contra. Así pues,

---

[10] *Moción de desestimación*, en la pág. 4.
[11] 3 LPRA § 9654.
[12] RAFAEL HERNÁNDEZ COLÓN, PRÁCTICA JURÍDICA DE PUERTO RICO, DERECHO PROCESAL CIVIL 193 (5ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2010).
[13] *Íd.*; Véase, además *Plan Salud Unión* v. *Seaboard Sur. Co.*, 182 DPR 714 (2011); *Caro* v. *Cardona*, 158 DPR 592 (2003).

"[l]a notificación es parte integral de una actuación judicial y para que una resolución u orden surta efecto, tiene que ser no solamente emitida por un tribunal con jurisdicción, sino también notificada adecuadamente a las partes[,] ya que es a partir de la notificación que comienzan a cursar los términos establecidos". En ese sentido, una notificación defectuosa puede conllevar graves consecuencias, demoras e impedimentos en el proceso judicial, así como crear un ambiente de incertidumbre sobre cuándo comienza a transcurrir el término para acudir a un tribunal de mayor jerarquía para revisar el dictamen recurrido. En conclusión, es claro que una notificación defectuosa impide que comience a transcurrir el término para recurrir de cualquier determinación final, ya sea judicial o administrativa.[14]

La consecuencia ineludible de una notificación defectuosa es que priva de jurisdicción a un tribunal para considerar y decidir casos o controversias. Si el tribunal no tiene jurisdicción, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia. Es decir, procede la inmediata desestimación del recurso apelativo según lo dispuesto en las leyes y los reglamentos para el perfeccionamiento de estos recursos.[15]

III.

De la propia *Resolución*, del expediente administrativo y del *Recurso de Revisión* incoado surge que la *Resolución* no fue notificada a la abogada de la Recurrente. Acorde con el estado de derecho, según acepta la propia Agencia recurrida, la *Resolución* incorrectamente notificada no surtió efecto y los términos no han comenzado a decursar. Esto ocurrirá tan pronto la OGPe notifique adecuadamente su dictamen a todas las partes. Ello así, el Recurso presentado es uno prematuro, sobre el cual carecemos de autoridad para considerarlo en los méritos.

IV.

Por los fundamentos antes expuestos, *desestimamos* el Recurso presentado por falta de jurisdicción por prematuro.

---

[14] *Torres Alvarado* v. *Madera* Atiles, 202 DPR 495, 501-502 (2019) (citas omitidas).
[15] *Íd.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones